Douglas DOBSON, Plaintiff–Appellant,

v.

HARTFORD FINANCIAL SERVICES GROUP, INC., Hartford Life & Accident Insurance Co., Defendants–Appellees.

Docket Nos. 02–9061, 02–9090.

United States Court of Appeals, Second Circuit.

Argued: June 3, 2003.

Decided: Nov. 19, 2004.

Jeffrey Lewis, Lewis & Feinberg, P.C., Oakland, CA (Dan Feinberg, Lewis & Feinberg; Mark DeBofsky, Daley, DeBofsky & Bryant, Chicago, IL; and Victoria de Toledo, Casper & de Toledo, Stamford, CT, on the brief), for Plaintiff–Appellant.

Rick H. Rosenblum, Akin Gump Strauss Hauer & Feld L.L.P., San Antonio, TX (Vaughn Finn, Shipman & Goodwin, L.L.P., Hartford, CT, on the brief), for Defendants–Appellees.

Mary Ellen Signorille, AARP Foundation Litigation, Washington, D.C. (Melvin R. Radowitz, on the brief), for amicus curiae AARP.

Before: LEVAL * and SOTOMAYOR, Circuit Judges, and DANIELS, District Judge.**

LEVAL, Circuit Judge.

Plaintiff Douglas Dobson appeals from those parts of the judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) that denied his motion for class certification and granted summary judgment to defendant Hartford Life & Accident Insurance Company ("Hartford"). Dobson, who received payments of disability benefits after the date he alleges they were due to be paid, sued (for himself and on behalf of similarly situated persons) for interest on the overdue payments. We affirm the district court's ruling that Hartford did not breach its fiduciary duty to Dobson by failing to disclose that it had made gratuitous payments of interest on delayed benefits to certain claimants. However, we vacate the judgment and remand for reconsideration whether the terms of the ERISA plan implicitly obligated Hartford to pay interest to plaintiff on disability benefits that remained suspended after Hartford had taken more than a reasonable time to evaluate plaintiff's claim. We also vacate and remand the denial of class certification on that claim and the claim for equitable disgorgement.

## Background

### Plaintiff's Disability Claim

It appears that for purposes of the motion for summary judgment, the following

---

* Judge Sack, originally a member of the panel, recused himself subsequent to oral argument. Judge Leval was thereafter added to the panel by random selection.

** The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

facts were not in dispute: Plaintiff Douglas Dobson was employed as an anesthesiologist at the West Central Anesthesiology Group, and participated in West Central's long term disability insurance plan ("the Plan"). The Plan was administered by defendant Hartford, and is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* In 1993, plaintiff could no longer work as an anesthesiologist due to obstructive sleep apnea, and he applied for long term disability benefits under the Plan. Hartford approved the claim and began paying plaintiff a monthly benefit of $10,000. In April 1997, however, after paying benefits for four years, Hartford informed plaintiff that it was suspending his benefits "due to lack of proof of continuous disability." *Dobson v. Hartford Fin. Servs.*, 196 F.Supp.2d 152, 154 (D.Conn.2002).

In April and May 1997, plaintiff submitted evidence to document that his disability was in fact permanent, but on July 14 Hartford responded by declining to reinstate the benefits. On October 3, 1997, Hartford formally rejected plaintiff's evidence as insufficient, permitting him to appeal. Plaintiff then submitted further evidence, including a diagnosis of continuous disability by a sleep disorder specialist. At the same time, plaintiff requested that Hartford reinstate his benefits pending consideration of the claim, asserting that they were his family's primary source of income. Hartford denied the request. On November 24, 1997, Hartford again rejected plaintiff's proofs on the ground that his specialist was not "board certified ... at an accredited sleep center." *Id.* at 154–55.

On January 8, 1998, plaintiff's counsel formally appealed the denial and informed Hartford both that there was no such thing as board certification of sleep specialists, and that the sleep center in question was accredited. Finally, on April 22, 1998, after a year of suspension of payments, Hartford ultimately accepted the sufficiency of plaintiff's proofs and reinstated his eligibility for benefits retroactive to the date of suspension. Hartford then paid plaintiff thirteen months of benefits in a lump sum payment of $130,000, minus withheld taxes, without interest. *Id.* at 155. Plaintiff submitted a demand for interest, which Hartford rejected. *Id.* at 156–57.

### Procedural Background

Plaintiff brought this suit seeking relief with respect to Hartford's failure to pay him interest during the delay. He alleged two alternative theories. For the first theory, plaintiff asserted that interest was a benefit implicitly provided by the Plan, and was therefore recoverable in a civil action brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan." The second theory, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), asserted a right to equitable disgorgement of profits Hartford earned by wrongfully delaying his benefit payments. The complaint also sought a finding under § 502(a)(3) that Hartford breached its fiduciary duty by failing to inform plaintiff that in a few cases it had made interest payments to beneficiaries. Plaintiff moved for class certification on all of his claims. Hartford moved for denial of class certification and for summary judgment.

On March 11, 2002, the district court denied class certification and granted Hartford's motion for summary judgment in part, ruling that plaintiff had no entitlement to interest under the terms of the Plan, and that Hartford did not violate a fiduciary duty in failing to disclose the Plan's occasional interest payments. However, upon analysis of the Supreme Court's decision in *Great–West Life & Annuity*

*Insurance Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), concerning the scope of equitable relief available under § 502(a)(3), the court ruled that if Hartford's withholding of plaintiff's benefits was wrongful, it was obligated to disgorge any profits it had earned by investment of the withheld benefits. Hartford then stipulated to judgment in the amount of $3779.22, representing the amount it had earned as a result of its delay in paying plaintiff's benefits. The court ordered Hartford to pay a portion of plaintiff's attorney's fees on account of his partial victory.

Plaintiff appeals the decisions adverse to him; Hartford has not appealed from the ruling on equitable disgorgement under § 502(a)(3). We will therefore express no views on the merits of that aspect of the judgment.

## Discussion

### 1. Interest Claim under § 502(a)(1)(B)

Plaintiff first contends that the terms of the Plan implicitly require Hartford to pay interest on benefits not paid when due. He contends that interest is a "benefit[ ] due to him under the terms of his plan." Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan." Defendant does not dispute that if the terms of the Plan do call for payment of interest, then interest may be recovered in a civil action under § 502(a)(1)(B).

The parties' contractual dispute centers on two questions. First, once Hartford suspended plaintiff's benefits for lack of proof of continuous disability, and plaintiff submitted proofs which Hartford ultimately found to be satisfactory, did the Plan require Hartford to evaluate the proofs and reinstate plaintiff's benefits within a reasonable time? Second, assuming that Hartford was required under the terms of the Plan to reinstate plaintiff's benefits within a reasonable time, and that it did not do so, did the Plan implicitly oblige Hartford to pay interest to compensate plaintiff for the lateness of the payments?

Hartford would have us answer both questions in the negative. Because the Plan gives Hartford discretion to determine whether proof is satisfactory, Hartford contends the Plan should be understood to impose no limit of any kind on how long Hartford may take to make that determination. Under Hartford's argument, therefore, even after plaintiff submitted proof that his disability was continuous, and even though (as Hartford ultimately determined) the submitted proof was satisfactory, and even after the passage of a reasonable time for Hartford to satisfy itself as to the satisfactory nature of the proofs, Hartford was free under the contract to take unlimited further time before appraising plaintiff's proofs and reinstating his benefits.

On the second question, Hartford argues that, because the Plan makes no explicit mention of any obligation to pay interest, even where the Plan requires payment on specified dates Hartford is free to delay making the obligatory payments for months, years—indeed indefinitely—without incurring an obligation to pay interest on account of the delay.

■ Because plaintiff does not contend otherwise, we assume for the purpose of our discussion that in April 1997 Hartford was within its rights to demand that plaintiff submit new proof of continuous disability, and to suspend plaintiff's benefits at least until he submitted proof that Hartford found satisfactory. We do not address whether Hartford was required under the Plan to have a reasonable basis for doubting the continuing nature of plaintiff's disability before suspending his benefits; nor do we address the question at

what point plaintiff submitted satisfactory proofs. Hartford does not contest that plaintiff's benefits did accrue during the suspension. Indeed, Hartford ultimately paid them. It contests only whether it was obligated by the terms of the Plan to pay the benefits earlier than it did, and whether the Plan implicitly called for payment of interest if benefits were not paid when due.

Both questions are questions of contract to be decided under federal common law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir.2002). We therefore turn to the terms of the Plan, which are hardly a model of clarity. The relevant Plan provisions are set forth in the margin.[1]

### a. Does the Plan permit Hartford to delay unreasonably the payment of benefits?

We begin with the question when, if ever, the terms of the Plan required Hart-

---

1. **BENEFITS**

   **Article 1. Benefit Payment Due to Disability**

   You will be paid a monthly benefit if:
   (1) you become Disabled while insured under this plan;
   (2) you are Disabled throughout the Elimination Period;
   (3) you remain Disabled beyond the Elimination Period; and
   (4) you submit Proof of Loss satisfactory to The Hartford.
   Benefits accrue as of the first day after the Elimination Period and are paid monthly. No benefit will be paid for any day on which you are not under the care of a Physician.
   The Hartford will cease benefit payment on the first to occur of:
   (1) the date you are no longer Disabled;
   (2) the date you fail to furnish proof that you are continuously Disabled;
   (3) the date you refuse to be examined, if The Hartford requires an examination[.]

   \*   \*   \*   \*   \*   \*

   **CLAIMS**

   \*   \*   \*   \*   \*   \*

   **Claim Forms**

   When The Hartford receives a Notice of Claim, you will be sent forms for providing The Hartford with Proof of Loss. The Hartford will send these forms within 15 days after receiving a Notice of Claim.

   \*   \*   \*   \*   \*   \*

   **Proof of Loss**

   Written proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment. After that, The Hartford may re-quire further written proof that you are still Disabled.

   \*   \*   \*   \*   \*   \*

   The Hartford reserves the right to determine if Proof of Loss is satisfactory.

   \*   \*   \*   \*   \*   \*

   **Time Payment of Claims**

   If written Proof of Loss is furnished, accrued benefits will be paid at the end of each month that you are Disabled. If payment for a part of a month is due at the end of the claim, it will be paid as soon as written Proof of Loss is received.

   **Appeal of Claims Denied**

   If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision.

   \*   \*   \*   \*   \*   \*

   On any denied claim, you or your representative may appeal to The Hartford for a full and fair review.

   \*   \*   \*   \*   \*   \*

   A decision will be made by The Hartford no more than 60 days after the receipt of the request, except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after the request for review is received.

According to these provisions, benefits accrue to disabled beneficiaries "as of the first day after the Elimination Period." The Elimination Period for the policy in question is ninety days, which means that the Plan provides no benefits for the first ninety days of disability. In other words, if a participant becomes disabled on March 15, benefits begin accruing on the ninety-first day thereafter, or June 14. That benefits may have accrued, however, does not establish when those benefits are contractually due to be paid.

ford to reinstate plaintiff's benefits following plaintiff's submission of satisfactory proof of continued disability. Hartford argues that, under the Plan's language, the resumption of payments is not due until Hartford *actually* determines to its satisfaction that a beneficiary's disability is continuous, and that Hartford may take as long as it likes to do that. Hartford relies for this interpretation primarily on two provisions of the Plan. First, the Plan provides that Hartford may "cease benefit payment on . . . the date you fail to furnish ·proof that you are continuously Disabled." (In a similar vein, the Plan provides that once initial proof of disability is furnished, Hartford "may require further written proof that you are still Disabled.") Second, the Plan provides in the Proof of Loss section that Hartford "reserves the right to determine if Proof of Loss is satisfactory." Because the Plan grants Hartford the authority to require proof of continuous disability and the discretion to determine whether that proof is satisfactory, Hartford contends that resumption of benefits cannot be due until it has determined that the submitted proofs are satisfactory. In other words, in Hartford's view, once Hartford suspended plaintiff's benefits demanding proof of continuous disability, and plaintiff submitted proof which Hartford ultimately found satisfactory, Hartford had no contractual obligation to reinstate payment of benefits until it actually found the proof to be satisfactory, no matter how long Hartford took to make that determination.

Plaintiff disagrees and proposes two possible interpretations. First, the Time Payment of Claims section of the Plan provides that "[i]f written Proof of Loss is furnished, accrued benefits will be paid at the end of each month that you are Disabled." Plaintiff argues that this provision compels the conclusion that accrued benefits must be paid at the end of the month, once the beneficiary has submitted satisfactory proof of loss. Plaintiff acknowledges that the satisfactoriness of the proof, as determined by Hartford, ultimately governs *whether* any benefits accrue, but argues that the only factor governing *when* benefit payments must be resumed is the date on which the beneficiary submits satisfactory proofs. On this view, Hartford would be obligated to reinstate a claimant's benefits no later than the last day of the month in which the claimant submitted satisfactory proof that his disability was continuous, even if that proof was submitted only a day or two prior to the end of the month.

■ The district court rejected this claim because of Hartford's entitlement to time to assess the sufficiency of a claimant's proofs. *Dobson,* 196 F.Supp.2d at 160. We find no error in this ruling. Although the Plan's terms literally state that benefits "will be paid at the end of each month" as long as written proof of loss is "furnished," we agree that the Plan's terms, taken as a whole, fairly imply that Hartford must be given some opportunity to determine whether the proof submitted is satisfactory before it becomes obligated to resume payment.

■ Plaintiff also asserts a fall-back position, drawing from dicta in our opinion in *Dunnigan v. Metropolitan Life Insurance Co.,* 277 F.3d 223, 230–31 (2d Cir.2002).[2]

**2.** In *Dunnigan,* the plaintiff had claimed interest on delayed benefits under a similar plan. We determined that interest was recoverable as equitable relief under ERISA § 502(a)(3), and thus did not reach the plaintiff's contract claim under § 502(a)(1)(B). But because the district court had rejected the contract claim, we addressed in dicta its reasons for doing so. The district court had rejected the claim in part because the unique

As his alternative claim, plaintiff contends that payment of resumed benefits becomes due once (i) the claimant has submitted proof ultimately determined by Hartford to be satisfactory, and (ii) Hartford has had "a reasonable time ... to determine that the proof submitted to it was satisfactory." The duration of a "reasonable time" to review a claim might vary with such factors as the complexity of the facts, the need for follow-up to verify the proofs, and the difficulty of the determination. Plaintiff submits that the Department of Labor's regulations governing ERISA benefit plan claims procedures might provide guidance as to the duration of a reasonable time.[3]

The district court misconstrued this theory and, as a result, never ruled on what may be plaintiff's strongest argument. The court failed to recognize plaintiff's contention that the Plan allows the administrator a *reasonable* time to evaluate the sufficiency of proofs, the duration of which might vary from case to case, and as to

which the ERISA regulations would merely be advisory. Instead, the district court interpreted plaintiff's claim as a "*per se* allegation" that the period prescribed by the regulations defined the limits of reasonableness, such that "*any* delay after the periods specified in the Department of Labor regulations is unreasonable." *Dobson,* 196 F.Supp.2d at 162. The court thus never ruled on plaintiff's claim that resumption of payments became due after the expiration of a reasonable time following plaintiff's submission of his proofs of continuing disability. Apparently because the parties never raised the issue, the district court also did not remark on the Plan's explicit provision that after the initial denial of plaintiff's claim, and plaintiff's appeal from that denial, Hartford could take "no more than 60 days after the receipt of the request [for review]," except in "special circumstances" where another sixty days are permitted.

At first blush, plaintiff's view seems to us to be a more reasonable interpretation

factual basis of each disability application would make it "difficult or impossible" to determine when benefits were reasonably due. In response, we stated that

> a court could with relative ease determine the duration of a *reasonable* period ... following which an interest obligation might arise .... Absent good cause shown by the Plan administrator justifying a longer period, it is arguable that the ninety-day period specified by the regulations of the Secretary of Labor, formerly 29 C.F.R. § 2560.503–1(e)(3), for the making of such determinations, defines the duration of the reasonable period during which the Plan is not chargeable with an interest obligation.

*Dunnigan,* 277 F.3d at 230–31.

3. The regulations applicable at the time of Dobson's benefit claim required that initial claim determinations be made within "a reasonable period of time," but no more than ninety days "after receipt of the claim by the plan, unless special circumstances require an extension of time," in which case the administrator could take another ninety days. Once a claimant appealed a denial of benefits, the

administrator could take sixty days to review the denial, with the possibility of one sixty-day extension. *See* 29 C.F.R. § 2560.503–1(e)(1), (e)(3), (h)(1) (1997). As noted in the text below, the Plan explicitly incorporates the regulatory time limits for review decisions into its terms.

The current version of the regulations provides that *determinations of disability claims be made "within a reasonable period of time, but not later than 45 days after receipt of the claim,"* with the possibility of two thirty-day extensions. It similarly provides that disability appeals determinations be made "within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review," with the possibility of one forty-five-day extension if circumstances require. The new regulations also provide that the applicable time periods can be tolled while the plan is awaiting necessary information from the claimant. *See* 29 C.F.R. § 2560.503–1(f)(3), (f)(4), (i)(1), (i)(3), (i)(4) (2003).

of the Plan than defendant's, even recognizing the discretion that may be afforded to Hartford to interpret the Plan's language.[4] The Plan is a form of insurance. Participants pay premiums in exchange for the assurance of financial security in event of unforeseen disability. The Plan unmistakably intends generally to govern the time for the making of payments, as its terms require (once entitlement has been established) that payments be made on a monthly basis. The monthly payment obligation is designed to insure that a disabled beneficiary will receive his due in a regular stream of payments, enabling him to budget and meet obligations as they arise. The Plan also unmistakably forbids Hartford from delaying decisions indefinitely, at least once it has initially denied benefits and the claimant has sought review of that decision. In short, it is quite clear that the prescribed timing of required determinations and payments is an important feature of Hartford's contractual obligation.

Plaintiff's interpretation—that the administrator may take a reasonable time, but not an unreasonable time, for initial review of the proofs submitted in support of requests to reinstate benefits—seems far more consistent with the Plan's purpose and its explicit terms than Hartford's interpretation. If the Plan administrator were free at will to interrupt the monthly payment of benefits to a disabled beneficiary, demand proof of continuing disability, and delay unreasonably, even ad infinitum or until the beneficiary's death, before initially determining that the proofs submitted were satisfactory (and thus avoid ever triggering the explicit time limits for appeals), the Plan's requirement of regular monthly payments for a disabled beneficiary, and strict time limits for appellate determinations would be effectively nullified. The beneficiary's only option would be to retain counsel and sue for an injunction compelling payment of benefits. Hartford's reliance on the fact that the Plan reserves to it "the right to determine if Proof of Loss is satisfactory" does not seem particularly convincing as support for the proposition that it may take as long to decide as it likes.

■ The Plan does not clearly address whether Hartford was required to make an initial determination about the reinstatement of plaintiff's benefits within a reasonable time, as plaintiff contends, or was permitted to delay without limitation, as Hartford contends. And although it is clear from the terms of the Plan that Hartford was compelled to adjudicate plaintiff's appeal from the initial denial within specific time limits, it is not clear whether those limits were surpassed. Because the district court has never passed on these questions, we remand rather than decide the issues ourselves. We believe that like many questions in litigation, these will benefit from being first decided by the trial court and ultimately reviewed on appeal. Although we have expressed some preliminary views on the merits, that discussion is tentative and advisory. It is in no way binding on the district court. On remand, the district court should consider whether the implicit terms of the Plan require Hartford to initially appraise the proofs within a reasonable time, as plaintiff contends, or permit Hartford to delay beyond a reasonable time, in its sole discre-

---

4. We express no opinion on the appropriate standard of review for Hartford's interpretation of the Plan's language. The parties dispute the appropriate standard, and the district court stated that its result would be the same under either a *de novo* or an abuse of discretion standard. *See Dobson*, 196 F.Supp.2d at 157–58. We leave to the district court the resolution, if necessary, of the applicable standard of review on plaintiff's § 502(a)(1)(B) claim.

tion, as Hartford contends; it should also consider whether the decision on appeal was made within the specified period.

### b. Does the Plan permit Hartford to delay payment of benefits past their due date without interest?

█ Because the district court rejected plaintiff's arguments that the benefits were not paid when due, it did not resolve whether the Plan implicitly required Hartford to pay interest on past-due payments. Plaintiff argues that the Plan should be so interpreted. Hartford, observing that the Plan "neither mentions nor prescribes a method for calculating interest," argues that this silence is "dispositive evidence that interest on delayed benefits is not contractually authorized under the Plan."

We leave this dispute as well to be resolved in the first instance by the district court. But again we note our perception that plaintiff's interpretation of the Plan has some apparent merit.

The Plan requires that benefits be paid "monthly"—"at the end of each month that [the beneficiary is] Disabled." Hartford contends that because the Plan does not explicitly refer to an obligation to pay interest in the event this obligation is not met, Hartford is free to pay benefits after their due date without paying interest. If Hartford's argument is accepted, Hartford could again disregard its contractual obligation to pay benefits monthly. Instead of paying benefits when due, Hartford could accumulate the cash, conserve its resources, earn interest off the improperly retained funds, and deprive disabled beneficiaries of desperately needed benefits without contractual consequences—obligating the beneficiary to retain counsel and institute suit in the hope of obtaining relief quickly enough to avoid injury, or recovering some equitable substitute for interest on the delayed payments.

Plaintiff contends this is an unreasonable interpretation of the Plan. As noted above, the Plan is a form of insurance designed to provide disabled beneficiaries with a predictable monthly stream of benefit payments to enable them to meet their needs. If benefits are not paid until after they are due, beneficiaries receive less monetary value than they are contractually entitled to. Furthermore, they would presumably need to borrow to meet their accumulating obligations, thereby incurring interest expenses which they might never recover. Again, they might ultimately be able to protect themselves by bringing suit for an injunction to compel timely payments or by recovering an equitable substitute for interest. But those potential remedies may be scant comfort in view of the high cost and extreme impracticality of bringing suit for what are likely to be small amounts. Thus, plaintiff argues that interpreting the Plan as Hartford proposes would allow the administrator to defeat the accomplishment of the purpose for which the Plan was created.

Under plaintiff's argument, the failure of the Plan explicitly to mention interest is of little consequence. In view of the Plan's express provision for payment on clearly specified dates, the universally shared modern recognition of the time value of money, and the drastic consequences of interpreting the Plan as permitting the administrator to withhold benefit payments without an interest obligation, plaintiff argues that the Plan's silence on the question should be understood to imply, rather than to deny, a contractual obligation to pay interest. Plaintiff contends this obligation is implicit in the contract as a whole.

At first blush, plaintiff's interpretation seems to us to represent a more likely meaning of the Plan's silence on the question of interest than defendant's. As with

the question whether the payment of benefits was tardy under the terms of the Plan, our observations are tentative and not binding. The district court should reach its own conclusion.

### c. Hartford's other arguments.

Hartford advances other arguments to preclude any interest obligation, which seem to us to have little or no bearing on the question. We reject them.

(i) The district court cited opinions in this Circuit contemplating the availability of prejudgment interest as an equitable remedy in successful claims for wrongfully withheld ERISA benefits. *See, e.g., Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 898–99 (S.D.N.Y.1994) (awarding prejudgment interest on withheld benefits from the date "when the claim arose"), *aff'd,* 60 F.3d 956, 957 (2d Cir.1995); *Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Ret. Equities Fund,* 982 F.2d 783, 789–90 (2d Cir.1992) (declining to award prejudgment interest because interest had already accrued on the withheld benefits prior to deposit with the court). The district court suggested that treatment of interest as an equitable remedy was "difficult to reconcile" with the idea of interest as a contractual right. *Dobson,* 196 F.Supp.2d at 162–63. But there is nothing to reconcile. The fact that courts awarded or precluded interest on one theory tells nothing about whether those courts would have found interest owing as a contractual term as well had they considered that question—a question which may, in any event, have been mooted by the award made. Moreover, whether interest is due under the terms of a plan is determined by inspecting the terms of the particular plan. That interest was, or was not, due under the terms of the other plans reviewed in those cases does not tell us whether the present Plan calls for payment of interest.

(ii) Hartford also cites a string of cases from this Circuit in which courts have denied claims for interest on delayed benefits, and suggests that they stand for the general proposition that "absent an express plan provision to create an obligation to pay interest, no such obligation exists." The cited cases stand for no such proposition. Those were simply cases in which either the plaintiff conceded or the court found that the particular plan at issue did not call for the payment of interest. Those judgments made no assertion that a contractual obligation to pay interest must be expressly stated, rather than implied. *See McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 153 F.Supp.2d 268, 298 & n. 45 (S.D.N.Y.2001) (noting that interest was sought as equitable relief under § 502(a)(3), although stating in dicta that "Plaintiff cannot bring his claim for interest on delayed benefits under ERISA § 502(a)(1)(B) . . . because the Plan does not provide for interest on late payments"), *rev'd in part on other grounds,* 320 F.3d 151, 164 (2d Cir.2003); *Walsh v. Eastman Kodak Co.,* 53 F.Supp.2d 569, 573 (W.D.N.Y.1999) ("[Plaintiff] does not allege that the plan provided that interest was to be paid . . . ."); *Klein v. Empire Blue Cross & Blue Shield,* No. 93 Civ. 5187, 1998 WL 336633, *3 (S.D.N.Y. June 23, 1998) (assuming that "benefits have been fully provided" and treating the interest claim as extracontractual). A fourth case rejected a claim for interest under plan terms because the plaintiff failed to provide a copy of the plan. *See Miner v. Empire Blue Cross/Blue Shield,* No. 97 Civ. 6490, 2001 U.S. Dist. LEXIS 952, *8–*9, 2001 WL 96524, at *3 (S.D.N.Y. Feb.5, 2001). Of the remaining two cases cited by Hartford, one is the district court's opinion in *Dunnigan v. Metropolitan Life Insurance Co.,* 99 F.Supp.2d 307 (S.D.N.Y.2000); we vacated the judgment underlying that opin-

ion, and implied in dicta that the district court had not adequately addressed the contractual claim. *See Dunnigan,* 277 F.3d at 230–31. The last case is *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 270–72 (S.D.N.Y. 1997), in which the defendant plan paid five percent interest on delayed benefits and the district court declined to find that the plan imposed interest at a higher rate. None of those cases answers whether this Hartford Plan calls for payment of interest if a benefit payment is not made when due.

(iii) Finally, Hartford argues that permitting plaintiff to recover interest as an implicit provision of the Plan would be inconsistent with the Supreme Court's decision in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Hartford contends *Russell* supports the proposition that relief under § 502(a)(1)(B) "is limited strictly to those benefits that are *explicitly* set forth in the Plan" (emphasis added).

Hartford's argument is based on a misreading of *Russell.* The award allowed by the Court of Appeals in that case was "extracontractual," *id.* at 144, 105 S.Ct. 3085, but, in the view of the Court of Appeals, implicitly authorized by a provision of the ERISA statute. The Supreme Court reversed, cautioning courts against reading unexpressed remedies *into the statute.* In no way did the *Russell* opinion limit a court's authority under § 502(a)(1)(B) to award remedies provided by the terms of a plan, whether expressly or implicitly. *Russell* therefore has no bearing on the enforceability of obligations implied in the terms of a plan, whether for interest or anything else.

The plaintiff in *Russell* was receiving ERISA benefits for a back ailment when the plan administrator terminated her benefits on the basis of an orthopedist's report. After further examinations, the administrator eventually reinstated the benefits and granted retroactive benefits for the intervening months. *See id.* at 136, 105 S.Ct. 3085. Claiming that the delayed benefit payments caused her husband "to cash out his retirement savings which, in turn, aggravated the psychological condition that caused [her] back ailment," the plaintiff sued her plan administrator for damages. There was no claim that such damages were authorized by the terms of the plan. Plaintiff claimed rather the remedy was provided by the statute. *Id.* at 137, 105 S.Ct. 3085. The Ninth Circuit ruled in plaintiff's favor that compensatory damages were permitted under ERISA § 409(a) if the administrator had breached its fiduciary duty, and punitive damages if the administrator had acted with malice. *Id.* at 138, 105 S.Ct. 3085.

The Supreme Court reversed. In the first part of its decision, the Court held that ERISA § 409(a), and its companion enforcement provision § 502(a)(2), did not expressly authorize "an award of extracontractual damages to a beneficiary." *Russell,* 473 U.S. at 144, 105 S.Ct. 3085. This was primarily because § 409(a) expressly provides for relief to the plan as a whole rather than to individual beneficiaries. The Court noted that § 502(a)(1)(B), which provides contractual relief to individual beneficiaries, "says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim." *Id.* In the second part of its decision, the Court held that there was also no implied private right of action for individual beneficiaries to enforce rights under § 409. It reasoned that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute ... provide strong evidence that Congress did *not* intend to authorize other remedies that

it simply forgot to incorporate expressly." *Id.* at 146, 105 S.Ct. 3085.

Contrary to Hartford's characterization, *Russell* did not deal at all with the question of implicit *plan terms*. Rather, it rejected a remedy that was neither expressed nor implied in the Plan, but that the plaintiff claimed was implicit *in the ERISA statute*. As a result, the opinion has no bearing on a claim of implied contractual entitlement to interest on account of tardy payments.

Plaintiff here is not seeking extracontractual damages. He is seeking to "recover benefits due to him under the terms of his plan." ERISA § 502(a)(1)(B). If the district court, on remand, considers that the Plan's terms, fairly read, imply a right to interest, then the remedy for that right is supplied by the express statutory terms of ERISA. Our precedents interpreting *Russell* as barring implied statutory rights have never suggested that it likewise bars enforcement of implied contractual rights. *See, e.g., Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (holding that *Russell* prohibits the recovery of extracontractual damages against a plan administrator where, as a matter of contract, only the plan sponsor owed benefits).[5]

Private contracts are often incomplete, redundant, or self-contradictory. No sound principle of contractual interpreta-

---

5. We note parenthetically that our opinion today does not address whether a civil suit for compensatory interest, as opposed to interest as a contractual term or as equitable relief, would always constitute a forbidden suit for "extracontractual damages" within the meaning of *Russell*. That question is not properly before us. It was also not before us in *Dunnigan*, where interest was claimed only as a contract right and as equitable relief. *See* 277 F.3d at 229. The Third Circuit, which has found interest to be available as equitable relief, has likewise declined to reach the question. *See Fotta v. Trs. of the United Mine Workers of Am.*, 165 F.3d 209, 213 & n. 1 (3d Cir.1998). By contrast, the Seventh and Eleventh Circuits, which have permitted equitable interest awards under § 502(a)(3), have held that compensatory remedies not explicitly specified in the contract are unavailable under § 502(a)(1)(B). *See Flint v. ABB, Inc.*, 337 F.3d 1326, 1329–30 (11th Cir.2003), *cert. denied* 540 U.S. 1219, 124 S.Ct. 1507, 158 L.Ed.2d 153 (2004); *Clair v. Harris Trust & Savs. Bank*, 190 F.3d 495, 497 (7th Cir.1999). The *Clair* and *Fotta* opinions, it should be noted, predated the Supreme Court's narrowing of the scope of equitable relief permissible under ERISA in *Knudson*, 534 U.S. at 212–14, 122 S.Ct. 708. *See also Skretvedt v. E.I. Du-Pont de Nemours*, 372 F.3d 193, 196 (3d Cir. 2004) (reaffirming after *Knudson* that interest is available as an equitable remedy under § 502(a)(3)).

Reading *Russell* to preclude civil suits for compensatory interest would have some odd effects. A beneficiary who engages in lengthy negotiations to settle a benefit dispute (as plaintiff did here) instead of bringing suit immediately risks winning those benefits without interest to compensate for the delay. By contrast, if the beneficiary brings suit immediately for an injunction to compel benefit payments, he can avoids the delay; similarly, if he brings suit at any time before the insurer pays his claim, he can recover prejudgment interest. *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273–74 (3d Cir.2001) (holding that beneficiaries can sue under § 502(a)(1)(B) for a federal court injunction to enforce the delivery of wrongfully withheld benefits); *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir.2000) (permitting federal courts to award prejudgment interest on successful suits for wrongfully withheld benefits).

If the rule of *Russell* bars independent suits for interest because interest alone constitutes "extracontractual damages," then the rule does no more than penalize beneficiaries for *not rushing to the courthouse* before benefit disputes are settled with retroactive payments. We find it hard to believe that Congress intended ERISA's "comprehensive and reticulated" remedial scheme, *Russell*, 473 U.S. at 146, 105 S.Ct. 3085, as an illogical incentive to sue. *See Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (noting that one of the purposes of ERISA is to avoid unnecessary litigation expenses).

tion assumes that private contracting parties always articulate their agreements with completeness and clarity. The Supreme Court has repeatedly indicated that courts should determine "rights and obligations" under ERISA plans by developing a body of federal common law. *See Dedeaux,* 481 U.S. at 56, 107 S.Ct. 1549; *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). "In interpreting plan terms for purposes of claims under [§ 502(a)(1)(B) ], we apply a federal common law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions." *Feifer,* 306 F.3d at 1210; *see also Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 84 n. 5 (2d Cir.2001).

■ Under "general principles of contract law," a failure to locate explicit contractual language does not mark the end of proper judicial interpretation and construction. Contracting parties often express their agreements imprecisely or incompletely. In such cases, if the interpreting court can discern from the contract as a whole what the parties "must have intended," it should enforce that intention despite a lack of express terminology. *See* 11 Richard A. Lord, *Williston on Contracts* § 31:7, at 321 (4th ed. 1999) ("It should be noted that terms are to be implied in contract, not because they are reasonable, but because they are necessarily involved in the contractual relationship, such that the parties must have intended them and must have failed to express them only because of sheer inadvertence or because they are too obvious to need expression. In this connection, it has been said that most contracts include implied conditions that are indispensable in effectuating the intentions of the parties."); *Sacramento Navigation Co. v. Salz,* 273 U.S. 326, 329, 47 S.Ct. 368, 71

L.Ed. 663 (1927) ("[A] contract includes, not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made."). *See also Restatement (Second) of Contracts* § 204 & cmt. b, at 96–97 (1981) (stating that if the parties "fail to foresee the situation which later arises," or fail to manifest their intentions "because the situation seems to be unimportant or unlikely, or because discussion of it might be unpleasant or might produce delay or impasse," the court may supply a term "which is reasonable in the circumstances."). Implied agreements to pay interest on delayed disbursements of owed money fit squarely within this tradition of common law contract interpretation:

> It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity, not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach .... Every one who contracts to pay money on a certain day knows that, if he fails to fulfil his contract, he must pay the established rate of interest as damages for his nonperformance. Hence it may correctly be said that such is the implied contract of the parties.

*Spalding v. Mason,* 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738 (1896) (quoting *Curtis v. Innerarity,* 47 U.S. 146, 154, 6 How. 146, 12 L.Ed. 380 (1848)); *see also Fotta v. Trs. of the United Mine Workers of Am.,* 165 F.3d 209, 213 (3d Cir.1998) ("Interest for late payment has long been regarded as an implicit part of a contractual obligation to pay money.") (citing the same language from *Spalding* ).

■ As a general matter, we have not read *Russell*'s refusal to imply a cause of

action for consequential damages under ERISA § 409 to limit courts' ability to supply implied terms to contracts governed by ERISA. *See, e.g., Feifer,* 306 F.3d at 1212 (finding as a matter of federal common law that, "absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest ... no later than the time that the employee becomes disabled."). We note that two other circuits have held to the contrary, suggesting that rights and obligations not explicitly specified in the plan are unenforceable under § 502(a)(1)(B). *See Flint v. ABB, Inc.,* 337 F.3d 1326, 1329–30 (11th Cir.2003), *cert. denied* 540 U.S. 1219, 124 S.Ct. 1507, 158 L.Ed.2d 153 (2004); *Clair v. Harris Trust & Savs. Bank,* 190 F.3d 495, 497 (7th Cir.1999). Because we see no justification in *Russell* or any other authority for treating contractual rights differently depending on whether they are clearly stated or implied, we respectfully disagree.[6]

### d. Mootness

■ As a final matter, we note the possibility that plaintiff's claim may be moot. Because the district court required Hartford to disgorge profits on the withheld payments under § 502(a)(3), plaintiff may already have recovered equitably all of the money to which he claims entitlement as contractual interest. We inquired into this matter at oral argument, but received no conclusive answer. The district court, however, should inquire on remand whether the stipulated award of Hartford's wrongful profits gave plaintiff all that he might recover on his claim for contractually owed interest. If so, there is no live controversy.

### 2. Duty to Disclose *Ex Gratia* Payments under § 502(a)(3)

Hartford has on occasion paid interest on delayed benefits to other beneficiaries. A Hartford manager explained that the company has "an informal practice of paying interest on certain retroactive [long-term disability] benefits payments, which it refers to as '*ex gratia*' payments." *Dobson,* 196 F.Supp.2d at 155. According to Hartford, there is no written policy governing such payments, nor are decisions to pay made by any particular officer. Instead, such decisions are made on an ad hoc basis in response to specific requests. According to the manager's affidavit:

Hartford reviews the participant's claim file and Hartford's handling of the claim to make a determination as to whether

---

6. Indeed, in a case decided the same term as *Russell,* the Supreme Court suggested that an employee-benefit plan incorporated within a labor contract might contain an implied term providing a beneficiary with compensation for erroneously suspended benefits. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Supreme Court of Wisconsin had "assumed that the only obligations the parties assumed by contract are those, expressly recited in the agreement, in this case the right to receive benefit payments." *Id.* at 214, 105 S.Ct. 1904. But the Court rejected the "assumption that the labor contract creates no implied rights .... Rather, it is a question of federal contract interpretation whether there was an obli-gation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis–Chalmers' conduct breach that implied contract provision." *Id.* at 215, 105 S.Ct. 1904.

We also note that in arguing that *Russell* forbids finding implied terms in ERISA plans, Hartford is inconsistent. In spite of this Plan's express provision requiring that "[i]f written Proof of Loss is furnished, accrued benefits will be paid at the end of each month that you are Disabled," Hartford argued successfully that we should find an implication from other provisions that the Plan affords the administrator time to evaluate a claimant's proofs before making payment.

to settle the dispute. There are other factors, unrelated to the actual [disability] claim that Hartford may consider in making its business decision. For example, there are instances where the request for an *"ex gratia"* payment might be made by the Plan Sponsor, Plan Administrator, or the insurance broker who services the account in question. In those situations, Hartford may weigh the business relationships involved in determining whether to make an *"ex gratia"* payment.

... [I]n each instance, Hartford weighs the relative costs and benefits involved in resolving the dispute, and in some circumstances an *"ex gratia"* interest payment may be made.

*Id.* at 156. Hartford records demonstrate that since 1998 interest payments were made in no more than five cases on an *"ex gratia"* basis. *Id.* at 156.[7]

Plaintiff contends that Hartford owed him a fiduciary duty to disclose that it had made the *"ex gratia"* payments. He argues that the making of those interest payments was a *"policy or practice"* of the Plan, material to the rights and interests of Plan beneficiaries, which the fiduciary was required to disclose.

■■■■ A number of authorities assert a plan fiduciary's obligation to disclose information that is material to beneficiaries' rights under a plan, even if such information goes beyond the four corners of the plan itself. *See, e.g., Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5, 10 (2d Cir.1997) (finding a duty to disclose "complete and accurate information about [plan] options," including effect on benefits of dying before retirement); *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1015–16 & n. 17 (3d Cir.1997) (arguable duty to dis-

close that benefit election was irrevocable) (citing *Restatement (Second) of Trusts* § 173 cmt. d (1959)); *Shea v. Esensten,* 107 F.3d 625, 628 (8th Cir.1997) (duty "to communicate any material facts which could adversely affect a plan member's interests," including that plan gave treating physicians a financial incentive to minimize referrals to specialists); *Eddy v. Colonial Life Ins. Co. of Am.,* 919 F.2d 747, 751 (D.C.Cir.1990) (duty upon inquiry "to provide complete and correct material information on [beneficiary's] status and options," including right to extend individual coverage after group plan discontinued); *Dellacava v. Painters Pension Fund of Westchester & Putnam Counties,* 851 F.2d 22, 27 (2d Cir.1988) (duty to notify pensioners of employer's failure to contribute to the plan).

■■■■ But that duty to disclose is not unlimited. The authorities do not suggest that the disclosure obligation applies to every piece of information a beneficiary might find useful in seeking a recovery from the plan. *See Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein,* 107 F.3d 139, 147 (2d Cir.1997) ("[W]e think it inappropriate to infer an unlimited disclosure obligation [from general fiduciary duty provisions of ERISA].""). In the Ninth Circuit's phrasing, there must be a "meaningful nexus between the information ... and the provision of benefits or defrayment of expenses." *Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non–Bargaining Ret. Plan,* 72 F.3d 686, 694 (9th Cir.1995) (en banc) (holding that participants had no right to the names and addresses of other participants, even though that knowledge would have facilitated litigation that might in turn have increased benefits).

---

**7.** According to a review of the documents by plaintiff's counsel, interest payments were made in five other cases pursuant to settle-ment or disposition of litigation. Plaintiff does not rely on those cases to establish his fiduciary duty argument.

■ In this case it is undisputed that Hartford, as Plan administrator, never believed that a beneficiary had a right guaranteed by the Plan to interest on benefits not paid when due. The fact that on a few occasions it paid interest on an *ex gratia* basis to shore up important business relationships was not material to plaintiff's claim that the Plan provides an obligation to pay interest. Nor is there any indication that Hartford would have paid interest to one who knew of the *ex gratia* payments. We therefore agree with the district court's determination that the information was not material to plaintiff's rights under the Plan and that Hartford did not breach its fiduciary duty by failing to disclose it.[8]

### 3. Class Certification.

■ The district court rejected class certification of plaintiff's equitable disgorgement claim because it found that the dispositive inquiry into the wrongfulness of Hartford's delay would inevitably involve "individualized assessment of the information available to Hartford within the regulation period, the complexity of the claim of disability, and other claims handling factors." *Dobson*, 196 F.Supp.2d at 165. Although it rejected the § 502(a)(1)(B) contract claim for interest on the merits as a *per se* claim, the district court indicated that were the claim not a *per se* claim it would be inappropriate for class resolution for substantially the same reasons. *See id.* at 161 n. 25. In making this ruling, the court failed to recognize that the Plan requires determinations on appeal to be made within sixty days (barring "special circumstances"). Because the court never addressed this issue, we vacate its denial

of class certification on the two late-payment claims and remand for reconsideration. Because we affirm the rejection of plaintiff's duty-to-disclose claim on the merits, we affirm the district court's denial of class certification on that claim as moot.

### 4. Attorney's Fees.

Finally, plaintiff requests that if we reverse the district court's resolution of the § 502(a)(1)(B) claim, we simultaneously reverse the district court's reduction of allowed fees. Because it remains unclear to what extent plaintiff will ultimately succeed on the merits of his suit, we leave the issue of attorney's fees to be resolved by the district court when final judgment is entered.

### Conclusion

The judgment of the district court is AFFIRMED IN PART AND VACATED AND REMANDED IN PART for further proceedings consistent with this opinion.

---

8. Of course, that Hartford was not required to disclose the *ex gratia* payments says nothing about whether Hartford is in fact obliged by the Plan to pay interest on withheld benefits as a term of the Plan, and whether, if so, the Plan administrator must notify participants of that right.