[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-15029

_____

D.C. Docket No. 02-20424-CV-DLG

WILLIE R. FLINT, on behalf of himself
and all others similarly situated,

                                        Plaintiff-Appellant,

        versus

ABB, INC., f.k.a. ABB Power,
T&D CO., INC., et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 21, 2003)**

Before BARKETT and KRAVITCH, Circuit Judges, and FULLAM[*], District Judge.

KRAVITCH, Circuit Judge:

This case presents two questions. The first is whether § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), authorizes an ERISA plan beneficiary to receive interest on reinstated benefits when the employee-benefit plan (the "Plan") does not explicitly provide for interest on reinstated benefits. The second question is whether plaintiff-appellant Willie R. Flint has stated a claim under § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), that would allow him to recover interest on reinstated benefits.

I.    BACKGROUND

Flint is a former employee of defendant-appellee ABB, Inc. After an automobile accident in March 1998, Flint applied for and received disability benefits under ABB's Plan. He had been receiving disability benefits for approximately three years when ABB, through its claims processor, Kemper National Services ("Kemper"), received information from Flint's attending physician indicating that Flint was no longer totally disabled. Under the terms of the Plan, ABB could stop

---

[*] Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

paying disability benefits if Flint either (1) was "no longer totally disabled" *or* (2) failed to "give proof of [his] continued disability."

Given the Plan's provisions, ABB investigated whether to continue paying Flint's disability benefits. It requested an independent labor-market survey, which concluded that "several appropriate positions were found" in which Flint could work. Consequently, ABB informed Flint on June 19, 2001 that he was no longer "totally disabled" within the meaning of the Plan and that his disability benefits would terminate on July 1, 2001. June 19, 2001 was the first time that Kemper informed Flint that his case was under review.

Flint wrote a letter dated July 2, 2001 to appeal the disability termination. On August 31, 2001, ABB, through Kemper, denied Flint's appeal. In October 2001, Flint again appealed the termination of benefits and this time provided Kemper with additional medical information. Flint also asked Kemper to give him a filing extension so that he could have more time to furnish additional medical information to support his claim for reinstatement. He asked for this extension because his doctor was unable to see him within the appeals period. In November 2001, Kemper acknowledged receiving the second appeal and granted Flint an extension in which to provide additional medical information supporting his claim. Flint provided the additional medical information, and shortly thereafter, Kemper reinstated Flint's

benefits and made the reinstatement retroactive to July 1, 2001. Kemper issued a check for these benefits on December 28, 2001. Flint has conceded that the appeals process, which ultimately led to the reinstatement of his benefits, did not violate the Plan, the ERISA statute, or any Department of Labor regulations.

Flint brought suit against ABB in February 2002, maintaining that he is entitled to interest payments on the retroactive Plan benefits. Flint characterized these retroactive benefits as "delayed benefits." Flint conceded that "[t]he Plan documents are silent regarding the payment of interest on Delayed Benefits"; nevertheless, he claimed that § 502(a)(1)(B) and § 502(a)(3)(B) of ERISA allow plaintiffs to recover accrued interest on reinstated benefits, even when an employer's plan is silent on the issue.

ABB moved to dismiss Flint's claim pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Flint had not stated a claim upon which relief could be granted. The district court granted the motion, concluding that Flint had not alleged facts that would entitle him to relief under either § 501(a)(1)(B) or § 502(a)(3) of ERISA. The court held that § 501(a)(1)(B) does not create an implied right to recover accrued interest for reinstated payments, but instead allows recovery only for "benefits specified in the plan." It also held that § 502(a)(3)'s catch-all provision concerning "appropriate equitable relief" might allow plaintiffs to recover accrued

4

interest for reinstated benefits—but only when benefits are unreasonably delayed or wrongfully withheld. The court concluded that Flint had not pleaded facts demonstrating that ABB had unreasonably delayed or wrongfully withheld his benefits. Accordingly, it dismissed Flint's claim without prejudice and allowed Flint to amend his complaint, which he did; the district court concluded, however, that Flint's amended complaint had not alleged facts that, if proven, would entitle him to relief under § 502(a)(3)(B)'s catch-all provision. Flint also requested a declaration that he and other plan members had present and future rights to receive interest on reinstated benefits, but the district court denied this relief as well.

## II.    STANDARD OF REVIEW

We review de novo the dismissal of a complaint for failure to state a claim, accepting all allegations in the complaint as true and construing facts in a light most favorable to the plaintiff. Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993). A court cannot use Federal Rule of Civil Procedure 12(b)(6) to dismiss a complaint for failure to state a claim "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Sheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

III. ANALYSIS

We must decide whether Flint has stated a claim under either § 502(a)(1)(B) or § 502(a)(3)(B) that entitles him to interest on his reinstated benefits.

A.      *Whether Interest for Reinstated Benefits Is an Implied Term of § 502(a)(1)(B)*

Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary of an employee-welfare benefit plan may bring a civil action

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).

Flint argues that accrued interest payments constitute "benefits due to him under the terms of his plan" within the meaning of § 502(a)(1)(B), reasoning that paying interest on reinstated benefits is an implied term of the Plan. The basis for this argument is that (1) ERISA plans are contracts and (2) the default rule in contract law is that a party is entitled to receive interest on unpaid obligations to pay money.[1] According to this theory, ABB breached the contract by delaying the payment of benefits and, consequently, should pay Flint interest to compensate him for the time

---

[1] Flint cites the Supreme Court's opinion in Curtis v. Innerarity, 6 How. 146 (1848), which states, "Every one who contracts to pay money on a certain day knows, that, if he fails to fulfil his contract, he must pay the established rate of interest as damages for his non-performance. Hence, it may correctly be said, that such is the implied contract of the parties." Id. at 154.

value of the reinstated benefits.

We are reluctant to infer an implied cause of action from § 502(a)(1)(B). The Supreme Court has "observed repeatedly that ERISA is a '"comprehensive and reticulated statute," the product of a decade of congressional study of the Nation's private employee benefit system.'" <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 209 (2002) (quoting <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 251 (1993) (quoting <u>Nachman Corp. v. Pension Benefit Guar. Corp.</u>, 446 U.S. 359, 361 (1980))). The Court has "emphasized [its] unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" <u>Mertens</u>, 508 U.S. at 254 (quoting <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 146–47 (1985)).

Furthermore, no circuit has recognized a claim for interest under § 502(a)(1)(B) of ERISA. The only circuit to address the issue directly has ruled that if interest is not a benefit expressly provided for in the employee-benefit plan, it cannot be recovered under § 502(a)(1)(B), because "only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B)." <u>Clair v. Harris Trust & Sav. Bank</u>, 190 F.3d 495, 497 (7th Cir. 1999) (Posner, J.). Given the Supreme Court's unwillingness to allow implied causes of action under ERISA and the fact that, like the plan in <u>Clair</u>,

7

the Plan here does not provide for such interest, we follow <u>Clair</u> and conclude that Flint's claim under § 502(a)(1)(B) fails.

B.     *Whether Flint Has Stated a Claim Under § 502(a)(3)(B) that Would Allow Him to Recover Interest on Reinstated Benefits*

Flint argues that § 502(a)(3)(B) of ERISA supplies another basis for recovering accrued interest for reinstated benefits. Section 502(a)(3) provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .*

29 U.S.C. § 1132(a)(3) (emphasis added).

Flint maintains that awarding accrued interest on reinstated benefits falls into the category of "appropriate equitable relief." ABB responds, correctly, that interest on money past due under a contract is a classic form of compensatory damages and, as such, does not qualify as "equitable relief" under § 502(a)(3)(B). <u>See</u> <u>Knudson</u>, 534 U.S. at 210 (explaining that suits for money damages are "the classic form of *legal* relief" and, therefore, are not recoverable under § 502(a)(3)(B)).

Flint, however, proposes an alternative theory for the causative event that gives rise to ABB's alleged duty to pay for the time value of the "delayed benefits." Flint

8

argues that ABB violated its fiduciary duties to him when it initially terminated his benefits and that ABB should therefore disgorge the benefit derived from this breach. Under this theory, the case is one of wrongful enrichment—the wrong being the breach of a fiduciary duty and the enrichment being the time value of the money that ABB should have paid to Flint between July 1 and December 28, 2001. Because courts of equity traditionally ordered fiduciaries to disgorge wrongful enrichments, Flint maintains that the relief he seeks is "appropriate equitable relief" under § 502(a)(3)(B).

Several circuit courts of appeals—speaking in terms of a fiduciary's "unjust enrichment" (rather than its "wrongful enrichment"[2])—have held that interest payments on delayed benefits may, in some circumstances, constitute "other equitable relief" within the meaning of § 502(a)(3)(B). See, e.g., Dunnigan v. Metro. Life Ins. Co., 277 F.3d 223, 229–30 (2d Cir. 2002); Jackson v. Fortis Benefits Ins. Co., 245 F.3d 748, 749–50 (8th Cir. 2001); Clair, 190 F.3d at 498–99; Fotta v. Trustees of the United Mine Workers of Am., 165 F.3d 209, 213 (3d Cir. 1998). Most of these cases,

---

[2] An unjust enrichment occurs when the defendant holds something that belongs to the plaintiff or receives, without legal cause, a transfer of goods or services from the plaintiff. The law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of wrongs and contracts. When the plaintiff relies on a breach of contract to supply the "unjustness" of the defendant's holdings, the right on which he or she relies arises from the breach of contract, not from an unjust enrichment; analogously, when the plaintiff relies on a wrong to supply the "unjust factor," the causative event is a wrongful enrichment rather than an unjust enrichment. See Peter Birks, Unjust Enrichment and Wrongful Enrichment, 79 Texas L. Rev. 1767, 1783 (2001).

9

however, were decided before <u>Great-West Life & Annuity Insurance Co. v. Knudson</u>, 534 U.S. 204 (2002), in which the Supreme Court's interpretation of "appropriate equitable relief" was more narrow than the interpretations found in previous decisions by the circuit courts of appeals. The Court instructed that, in determining whether relief "is legal or equitable in a particular case (and hence whether it is authorized by § 502(a)(3)) remains dependent on the nature of the relief sought," and the Court resisted plaintiffs' attempt to characterize their claim for enforcement of a reimbursement provision of an ERISA plan as one for equitable restitution. <u>Id.</u> The Court's decision in <u>Knudson</u>, therefore, raises the question whether § 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity.

We need not, however, decide that issue in this case. Even assuming that § 502(a)(3)(B) could be the basis for recovering interest, Flint's amended complaint does not state a claim upon which relief can be granted. Flint maintains that ABB breached its fiduciary duty by terminating his benefits without first requesting or allowing him a reasonable opportunity to provide evidence of continued disability before making the determination to discontinue benefits. Three circumstances described in the pleadings, however, lead us to reject Flint's argument. First, the Plan provided that ABB could stop paying disability benefits when Flint was "no longer

10

disabled," and, here, Flint's own doctor had advised ABB that Flint was no longer completely disabled. Furthermore, an independent report recommended several jobs that Flint could perform within the limitations prescribed by Flint's doctor. Second, the Plan specifies that "[i]n no case will benefits be paid by this Plan . . . for any period on or after the date [the employee] fail[s] to furnish satisfactory proof [of disability] as required by the insurance company . . . ." Therefore, the Plan entitled ABB to terminate benefits when Flint failed to provide proof of his continuing disability by July 1, 2001.[3] Furthermore, given that ERISA employers owe a fiduciary duty to all of their covered employees, ABB had a duty to protect and preserve benefit funds according to the provisions of the Plans and the ERISA statute. Finally, Flint has not pleaded facts that would show that ABB unduly delayed the ERISA appeals process or wrongfully refused to reinstate his benefits retroactively at the end of the process. Cf. Clair, 190 F.3d at 499 (holding that plaintiff was barred from collecting accrued interest when employer disbursed benefits according to the procedure and the time period outlined in the employee-benefit plan). To the contrary, Flint's own allegations make clear that the appeals process functioned according to Plan

---

[3] Flint's best argument to the contrary is that once ABB sent the June 19th notice, it voluntarily assumed the obligation to give Flint a reasonable time period in which to provide additional medical information. Yet, as the district court noted, neither the Plan nor ERISA regulations impose an advanced-warning requirement, and, given the Supreme Court's reluctance to find implied duties under ERISA, we decline to infer such an implied duty here.

11

provisions and ERISA regulations—and that this process led to the retroactive reinstatement of benefits within six months of the initial adverse decision. Accordingly, Flint has not stated a claim under § 503(a)(3)(B).

IV.   CONCLUSION

For the reasons stated, we AFFIRM the decision of the district court.