[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15038
Non-Argument Calendar

_____

D. C. Docket No. 06-00985-CV-TCB-1

ALBERT HEARD,

Plaintiff-Appellant,

versus

GEORGIA STATE BOARD OF PARDONS AND PAROLES,
MR. MILTON E. (BUDDY) NIX,
and Members,
GARLAND R. HUNT,
Vice-Charman,
GARFIELD HAMMOND, JR.
MR. EUGENE P. WALKER,
MRS. L. GALE BUCKER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 13, 2007)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Albert Heard, a Georgia state prisoner proceeding pro se, appeals the dismissal, pursuant to 28 U.S.C. § 1915A, of his 42 U.S.C. § 1983 complaint for failure to state a claim. He also appeals the district court's denial of his motion for reconsideration. For the following reasons, we affirm.

## I. BACKGROUND

Although the record is not entirely clear, it appears that Heard is currently serving concurrent twenty-year sentences for his 2000 and 2001 residential burglary convictions. His latest possible release date—the date on which he would be released if he served his entire sentence—is May 22, 2021. Heard filed a § 1983 action against members of the Georgia State Board of Pardons and Paroles (the "Board"), in their official and individual capacities, seeking, *inter alia*, compensatory damages, injunctive relief, and declaratory relief. In his complaint, Heard alleged, in pertinent part, that the defendants violated the Constitution's Due Process and Ex Post Facto Clauses by retroactively applying a policy requiring him to serve 90% of his sentence (the "90% policy") before he could become eligible for parole. After the Board denied Heard's request to reevaluate his parole eligibility date, Heard filed the instant § 1983 action.

2

After performing the required screening under the Prison Litigation Reform Act, 28 U.S.C. § 1915A, the district court sua sponte dismissed the complaint for failure to state a claim upon which relief could be granted. Heard filed a motion for reconsideration of the district court's dismissal, reiterating the arguments in his complaint and also contending that the court had failed to consider his claim that O.C.G.A. § 42-9-45(f) mandated that he be paroled after serving one-third of his sentence with a record of good behavior. The court denied his motion. Heard now appeals.

## II. DISCUSSION

### A. Sua Sponte Dismissal Under § 1915A

We review de novo the sua sponte dismissal of a complaint under § 1915A. Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Under § 1915A, the district court is required to screen civil complaints filed by prisoners against governmental officers or entities, and shall dismiss the complaint if it is frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b)(1), (b)(2). A complaint fails to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flint v. ABB, Inc., 337 F.3d 1326, 1328-29 (11th Cir. 2003). In screening a complaint under § 1915A, the

3

district court is required to review the action and identify cognizable claims. See 28 U.S.C. § 1915A(b). In doing so, the court must pierce the veil of the complaint and examine the underlying factual allegations. See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989) (applying 28 U.S.C. § 1915(d)). All allegations in the complaint must be viewed as true. Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, federal courts have discretion to dismiss pro se claims if they lack an arguable basis either in fact or in law. Nietzke, 490 U.S. at 324-25, 109 S.Ct. at 1831-32.

*1. Due Process Claim*

Establishment of a parole system does not automatically create a liberty interest in parole; "[o]nly when a state maintains a parole system that creates a legitimate expectation of parole does it [also] establish a liberty interest in parole that is subject to the protections of the Due Process Clause." Jones v. Ray, 279 F.3d 944, 946 (11th Cir. 2001). In Sultenfuss v. Snow, this court held that Georgia's parole system did not create such an expectation so that Georgia inmates have no liberty interest in parole. Jones, 279 F.3d at 946 (citing Sultenfuss v.

4

Snow, 35 F.3d 1494, 1502 (11th Cir. 1994) (en banc)). Moreover, it "is well-settled that there is no federal constitutional right to parole." Jones, 279 F.3d at 946 (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)). Where there is no liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness." O'Kelley v. Snow, 53 F.3d 319, 321 (11th Cir. 1995).

Under O.C.G.A. § 42-9-45(b), an inmate serving a felony sentence "shall only be eligible for *consideration* for parole *after*" having served nine months of or one-third of his sentence, whichever is greater. O.C.G.A. § 42-9-45(b) (emphasis added). Under O.C.G.A. § 42-9-45(f), "no inmate serving a sentence imposed for any of the crimes listed in this subsection shall be granted release on parole until and unless said inmate has served on good behavior" seven years or one-third of his prison sentence, whichever occurs first. O.C.G.A. § 42-9-45(f). Residential burglary is *not* one of the crimes listed in O.C.G.A. § 42-9-45(f).[1]

On appeal, Heard challenges the dismissal of his due process claim on the

---

[1] The enumerated offenses are: voluntary manslaughter, statutory rape, incest, cruelty to children, arson in the first degree, homicide by vehicle while under the influence of alcohol or as a habitual traffic violator, aggravated battery, aggravated assault, trafficking in drugs, and violations of Chapter 14 of Title 16, the Georgia Racketeer Influenced and Corrupt Organizations Act. O.C.G.A. § 42-9-45(f).

grounds that: he was entitled to an evidentiary hearing in the district court before the dismissal, the § 1915A frivolity review was not conducted by a magistrate judge, and the district court's decision was wrong on the merits.

As an initial matter, Heard's contention that he was entitled to an evidentiary hearing before the district court dismissed his complaint is without merit. Nothing in the text of § 1915A requires a district court to grant such a hearing before sua sponte dismissing an inmate's complaint for failure to state a claim, and this court has never held that such a requirement exists.

We likewise reject Heard's contention that his due process rights were violated because the § 1915A frivolity review was not conducted by a magistrate judge. There is no authority in either § 1915A, the case law of the Supreme Court, or the case law of this court supporting such a claim.

We also reject Heard's contention that the district court erred on the merits in dismissing his due process claim. As discussed above, Georgia inmates have no liberty interest in parole, and there is no federal constitutional right to parole. Jones, 279 F.3d at 946. Moreover, the Board has "significant discretion" in its application of, and departure from, the Parole Decision Guidelines. Sultenfuss, 35 F.3d at 1501. And to the extent Heard argues that O.C.G.A. § 42-9-45(f) created a liberty interest in parole, he is incorrect as, by its own terms, O.C.G.A. § 42-9-

6

45(f) does *not* apply to inmates incarcerated for residential burglary.

Accordingly, even liberally construing Heard's <u>pro se</u> complaint, we conclude that the district court correctly dismissed Heard's due process claim for failure to state a claim upon which relief could be granted.

### 2. *Ex Post Facto Claim*

The Ex Post Facto Clause prohibits states from enacting statutes which "make more burdensome the punishment for a crime, *after* its commission." <u>United States v. De La Mata</u>, 266 F.3d 1275, 1286 (11th Cir. 2001) (emphasis added). Retroactive changes to laws governing the parole of prisoners may, in some instances, violate the Ex Post Facto Clause. <u>Garner v. Jones</u>, 529 U.S. 244, 250, 120 S.Ct. 1362, 1267, 146 L.Ed.2d 236 (2000). To prevail on an Ex Post Facto Clause challenge concerning changes in parole procedures, a prisoner "must show that as applied to his own sentence the law created a significant risk of increasing his punishment." <u>Id.</u> at 255, 120 S.Ct. at 1370.

Heard bases his ex post facto claim on a letter he received from the Board in March of 2006. The letter stated that Heard's original tentative parole month ("TPM") had been extended to May of 2011 and that a performance review hearing was to be held in November of 2010. The letter further stated that Heard's previous "parole success likelihood score" and "crime severity level" had remained

7

unchanged.  On appeal, Heard argues that O.C.G.A. § 42-9-45(f) mandates that he be paroled after serving one-third of his sentence with a record of good behavior.  He contends that the Board's 90% policy was retroactively applied to his parole eligibility determination (as evidenced by resetting his TPM) so that requiring him to serve more than one-third of his sentence before he is paroled violates the Ex Post Facto Clause.  We disagree.

First, Heard's contention that O.C.G.A. § 42-9-45(f) compels his actual release on parole upon serving one-third of his sentence is erroneous.  As stated above, by its own terms, O.C.G.A. § 42-9-45(f) does *not* apply to Heard because he is incarcerated for residential burglary.  Moreover, O.C.G.A. § 42-9-45(f) does *not* require the actual *release* of an inmate upon serving seven years or one-third of his sentence on good behavior, rather, the statute provides that "no inmate" incarcerated for certain enumerated offenses (which, again, do *not* include residential burglary) shall be released on parole "until and unless" he has served seven years or one-third of his sentence on good behavior.  O.C.G.A. § 42-9-45(f).

Second, to the extent he claims that O.C.G.A. § 42-9-45(b) mandates his release on parole after having served one-third of his sentence, Heard is also incorrect.  The relevant language of that statute states that "an inmate serving a felony sentence or felony sentences shall *only be eligible* for *consideration for*

8

parole after the expiration of nine months of his or her sentence or one-third of the time of the sentences, whichever is greater." O.C.G.A. § 42-9-45(b) (emphasis added). The plain reading of this language is that Georgia inmates serving a felony sentence must serve a *minimum* of nine months or one-third of their sentence. The statute does *not* require the Board to actually *release*, or to even *consider* releasing, an inmate on parole at a particular time.

Third, the 90% policy was never applied to Heard, retroactively or otherwise. Heard's TPM is May of 2011. Thus, he will become eligible for parole consideration after serving approximately 50% of his 20-year sentence.

Heard is also incorrect to the extent he contends that the Board's most recent parole policy was retroactively applied to him. In November of 2005, the Board adopted a new rule that replaces the 90% policy and applies only to those inmates convicted on or after January 1, 2006. The new rule provides that inmates serving sentences pursuant to one or more enumerated offenses (including residential burglary) shall be assigned a crime-severity level of VIII, and, depending on their "parole success likelihood score," those inmates are required to serve either 90%, 75%, or 65% of their prison sentences. Ga. Comp. R. & Regs. 475-3-.05(7). Because Heard will become parole eligible after having served approximately 50% of his sentence and his crime-severity level has remained unchanged, we conclude

that the Board's latest policy has *not* been applied to him.

Accordingly, we conclude "beyond doubt" that Heard can prove no set of facts establishing an Ex Post Facto Clause violation.

## B.  Denial of the Motion to Reconsider

We review a district court's denial of a motion for reconsideration for abuse of discretion.  Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004).  Heard agues that the district court abused its discretion by failing to put forth any legal analysis or otherwise address the merits of his claims in denying his motion for reconsideration.  We disagree.  As the district court concluded, Heard's motion merely reiterated the allegations in his complaint.  And because we conclude that the record supports the dismissal of Heard's complaint for failure to state a claim, the district court did not abuse its discretion in denying the motion for reconsideration.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM.