Douglas DOBSON, Plaintiff,

v.

**HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,**
Defendant.

No. 3:99CV2256 (JBA).

United States District Court,
D. Connecticut.

Aug. 29, 2007.

Daniel M. Feinberg, Jeffrey Lewis, Lewis, Feinberg, Renaker & Jackson, Oakland, CA, Mark D. Debofsky, Daley Debofsky & Bryant, Chicago, IL, Victoria de Toledo, Casper & de Toledo, Stamford, CT, for Plaintiff.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Docs. # # 180, 183]

JANET BOND ARTERTON, District Judge.

Plaintiff Douglas Dobson initially brought this lawsuit against Hartford Life & Accident Insurance Company ("Hartford") under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), on behalf of a putative class of participants in long-term disability ("LTD") plans for which Hartford served as insurer who were denied interest on allegedly unreasonably withheld, and then retroactively paid, benefits.

The extensive procedural background of this case, including multiple decisions issued by this Court and one issued by the Second Circuit Court of Appeals, is described *infra*. At the current juncture, the parties have cross moved for summary judgment on plaintiff's remaining § 502(a)(1)(B) claim, which concerns plaintiff's claimed entitlement to interest on his LTD benefits which were allegedly arbitrarily withheld for thirteen months and then retroactively paid without interest in April 1998. See Hartford Mot. [Doc. # 180]; Dobson Mot. [Doc. # 183]. It is undisputed that Dobson's benefits plan ("the Plan") contains no explicit provision for interest to be paid on withheld/delayed benefits, but the parties dispute whether such a provision can be implied by the terms of the Plan such that interest is recoverable as part of the "benefit" of the Plan pursuant to § 502(a)(1)(B). On plaintiff's § 502(a)(3) claim, on which the Court has already entered a Stipulated Judgment [Doc. # 112], plaintiff seeks a declaration of a presumption entitling plan beneficiaries to disgorgement of Hartford's profits on withheld benefits whenever Hartford violates the time limits for deciding claims or appeals specified or incorporated into its ERISA plans and/or violates the time limits set forth in the applicable ERISA regulations. *See* Pl. Mot. For the reasons that follow, Dobson's Motion will be granted as to his § 502(a)(1)(B) claim and de-

nied as to his § 502(a)(3) claim, and Hartford's Motion will be denied.

## I. Factual Background

The following facts are undisputed and are taken from the parties' Joint Statement of Undisputed Facts Re: Cross–Motions for Summary Judgment [Doc. # 184]. Plaintiff Douglas Dobson was employed as an anesthesiologist at the West Central Anesthesiology Group ("West Central") and participated in West Central's long term disability insurance plan ("the Plan"). The Plan is insured and administered by Hartford and is governed by ERISA. Beginning in 1993, Dobson could no longer work as an anesthesiologist due to obstructive sleep apnea and thus he applied for LTD benefits under the Plan. Hartford initially approved Dobson's claim and began paying him a monthly benefit of $10,000, less tax withholding.

In April 1997, however, Hartford suspended Dobson's benefits, effective March 31, 1997, "due to lack of proof of continuous disability." A series of requests for information, submissions of documentation by Dobson, and internal requests for review/appeal followed. Ultimately, on April 22, 1998, Hartford reinstated Dobson's eligibility for benefits retroactive to the date of their suspension and mailed Dobson a check for 13 months of past-due benefits in a lump sum payment. The payment did not include any interest for any of the 13–month period during which Dobson's benefits had been suspended, although Dobson submitted a demand for such interest in 1997.

The relevant Plan provisions are as follows:

### BENEFITS

### Article 1. Benefit Payment Due to Disability

You will be paid a monthly disability if:

(1) you become Disabled while insured under this plan;

(2) you are Disabled throughout the Elimination Period;

(3) you remain Disabled beyond the Elimination Period; and

(4) you submit Proof of Loss satisfactory to The Hartford.

Benefits accrue as of the first day after the Elimination Period and are paid monthly. No benefit will be paid for any day on which you are not under the care of a Physician.

The Hartford will cease benefit payment on the first to occur of:

(1) the date you are no longer Disabled;

(2) the date you fail to furnish proof that you are continuously Disabled;

(3) the date you refuse to be examined, if The Hartford requires an examination.

### CLAIMS

### Claim Forms

When The Hartford receives a Notice of Claim, you will be sent forms for providing The Hartford with Proof of Loss. The Hartford will send these forms within 15 days after receiving a Notice of Claim.

### Proof of Loss

Written proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment. After that, The Hartford may require further written proof that you are still disabled.

The Hartford reserves the right to determine if Proof of Loss is satisfactory.

### Time Payment of Claims

If written Proof of Loss is furnished, accrued benefits will be paid at the end of each month that you are Disabled. If payment for a part of a month is due at the end of the claim, it will be paid as

soon as written Proof of Loss is received.

**Appeal of Claims Denied**

If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision.

On any denied claim, you or your representative may appeal to The Hartford for a full and fair review. A decision will be made by The Hartford no more than 60 days after receipt of the request, except in special circumstances (such as the need to hold a hearing), but in no case more than 120 days after the request for review is received.

*See* Joint Stmt. ¶ 23. The Plan section entitled "Calculation of Monthly Benefit Due to Total Disability" begins "[t]o determine the Monthly Benefit The Hartford will pay each month while you are Totally Disabled . . . ," *id.* ¶ 24, and "Monthly Benefit" is defined as "a monthly sum payable to you while you are Disabled, subject to the terms of the Plan," *id.* ¶ 25. The Plan incorporates the time limits set out in the Department of Labor (DOL)'s regulations concerning review of disability benefit claims—prior to 2002, the DOL regulations allowed 90 days for review of initial claims and 60 days for review of appeals; beginning on January 1, 2002, the DOL regulations allowed 45 days for initial claims and 45 days for appeals. *See* 29 C.F.R. § 2560.503–1(e)(1), (e)(3), (h)(1) (effective through December 31, 2001); 29 C.F.R. § 2560.503–1(f)(3), (f)(4), (i)(4) (effective after January 1, 2002). As quoted above, prior to 2002, the Plan's appeal provision also stated that Hartford was permitted to take "no more than 60 days after receipt of the request [for review,]" except in "special circumstances," where another 60 days were permitted. Additionally, during the

relevant time period, Hartford provided a "Conforming Instrument" to every employer or other plan sponsor who purchased Hartford group disability policies and those conforming instruments include the applicable time limits set forth in the DOL regulations (and Hartford changed the time limits in the instruments in 2002 to reflect the DOL's changes to its regulations). *Id.* ¶ 28.

## II. Procedural Background

In 2002, this Court granted Hartford's summary judgment motion on plaintiff's § 502(a)(1)(B) claim, finding no basis for a *per se* unreasonableness claim in the language of the Plan, and thus denying class certification on this claim as moot. The Court denied Hartford's motion as to plaintiff's § 502(a)(3) claim, holding that if Hartford's withholding of plaintiff's benefits was unreasonable and constituted a breach of fiduciary duty, then Hartford was obligated to disgorge any profits it had earned on investment of the withheld benefits.[1] The Court also denied class certification on this claim on grounds that determining whether Hartford was justified in exceeding the time limits in any particular case would "require individualized assessment of the information available to Hartford within the regulation time period, and other claims handling factors." *Dobson v. Hartford Fin. Servs.*, 196 F.Supp.2d 152, 165 (D.Conn.2002).

The Second Circuit vacated the dismissal of plaintiff's § 501(a)(1)(B) claim and the denial of class certification on both claims and remanded the case. *Dobson v. Hartford Fin. Servs. Group, Inc.*, 389 F.3d 386 (2d Cir.2004). Among the issues the Second Circuit directed should be considered on remand were, *inter alia*, whether the

---

1. Following the Court's Ruling, Hartford stipulated to judgment in the amount of $3,779.22 in favor of Dobson, pursuant to which the Court entered a Judgment [Doc. # 112].

Plan permitted Hartford to delay unreasonably the payment of benefits, whether the Plan permitted Hartford to delay payment of benefits past their due date without interest, whether plaintiff's § 502(a)(1)(B) claim was mooted by this Court requiring disgorgement of Hartford's profits on the withheld payments pursuant to § 502(a)(3), and whether the Plan's requirement that determinations on appeal must be made within 60 days, barring "special circumstances," altered the class certification assessment. *Id.*

After remand, the parties briefed the class certification issue and the Court concluded that, notwithstanding the provisions in the DOL regulations and the Plan for certain time limits to be applied for the processing of benefits claims and appeals, because determination of the claims of the putative class would nevertheless require an individualized assessment with respect to each plaintiff, class certification was not appropriate. *Dobson v. Hartford Life & Accident Ins. Co.,* No. 99cv2256 (JBA), 2006 WL 861021 (D.Conn. Mar. 31, 2006). Following the Court's denial of class certification, the parties filed the pending cross motions for summary judgment relating to plaintiff's remaining § 502(a)(1)(B) claim and to one issue which plaintiff contends is outstanding with respect to his § 502(a)(3) claim remedy.

### III. Standard

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the parties agree as to the material facts necessary for disposition of the matters at issue, summary judgment is appropriate. *See Leebaert v. Harrington,* 332 F.3d 134, 139 (2d Cir.2003).

### IV. Discussion

#### A. § 502(a)(1)(B) Claim for Interest

The Second Circuit remanded this case with instructions for this Court to consider, *inter alia,* whether, pursuant to plaintiff's § 502(a)(1)(B) claim for interest, the Plan permitted Hartford to delay unreasonably the payment of benefits and also whether the Plan permitted Hartford to so delay without payment of interest. Specifically, the Second Circuit expressed its "tentative" and "advisory" "preliminary views" as to the former question, stating that "[p]laintiff's interpretation—that the administrator may take a reasonable time, but not an unreasonable time, for initial view of the proofs submitted in support of requests to reinstate benefits—seems far more consistent with the Plan's purpose and its explicit terms than Hartford's interpretation," and directed this Court to consider "whether the implicit terms of the Plan require Hartford to initially appraise the proofs within a reasonable time, as plaintiff contends, or permit Hartford to delay beyond a reasonable time, in its sole discretion, as Hartford contends; it should also consider whether the decision on appeal was made within the specified period." 389 F.3d at 394–95.

With respect to entitlement to interest for unreasonably delayed benefits, the Second Circuit "note[d] [its] perception that plaintiff's interpretation of the Plan has some apparent merit," evincing concern that "[i]f Hartford's argument is accepted, Hartford could again disregard its contractual obligation to pay benefits monthly." *Id.* at 395. The Second Circuit also observed that "[i]f benefits are not paid until after they are due, beneficiaries receive

less monetary value than they are contractually entitled to. Furthermore, they would presumably need to borrow to meet their accumulating obligations, thereby incurring interest expenses which they might never recover." *Id.* The Second Circuit also noted its opinion that Hartford's argument based on the Supreme Court's decision in *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), was "based on a misreading," finding that *Russell* "caution[ed] courts against reading unexpressed remedies into the statute" itself, but "[i]n no way did the *Russell* opinion limit a court's authority under § 502(a)(1)(B) to award remedies provided by the terms of the plan, whether expressly or implicitly.... Contrary to Hartford's characterization, *Russell* did not deal at all with the question of implicit *plan terms.* Rather, it rejected a remedy that was neither expressed nor implied in the Plan, but that the plaintiff claimed was implicit *in the ERISA statute.*" *Id.* at 397–98 (emphasis in original). The Second Circuit thus noted "[i]f the district court, on remand, considers that the Plan's terms, fairly read, imply a right to interest, then the remedy for that right is supplied by the express statutory terms of ERISA. Our precedents interpreting *Russell* as barring implied statutory rights have never suggested that it likewise bars enforcement of implied contractual rights." *Id.* at 398.

The first remanded issues for this Court in adjudicating the pending motions are thus whether the Plan permits Hartford to unreasonably delay its payment of benefits and whether, in this case, Hartford did so unreasonably delay payment of plaintiff's benefits. Hartford concedes that it may not withhold/delay payment of benefits indefinitely, and by not substantively responding to Dobson's arguments on this score appears to also admit that its actions

with respect to Dobson's benefits were not reasonable. Hartford's response consists of its criticism of plaintiff for "devot[ing] several pages of his opposition to the proposition that Hartford acted unreasonably in withholding his benefits," stating that "whether Hartford acted unreasonably is not the issue before this Court on remand." Hartford Reply Mem. [Doc. # 190] at 2 n. 1; *accord* Hartford Opp. Mem. [Doc. # 186] at 15 ("If Hartford had unjustifiably withheld Dobson's LTD benefits without ever paying those benefits, Dobson could have sued under Section 502(a)(1)(B) to recover the benefits. But in April 1998, Hartford paid Dobson his LTD benefits for every month in which the benefits had been withheld. After Hartford made that retroactive payment, Dobson had no remedies available to him under Section 502(a)(1)(B) because, at that point, he had received all benefits due to him under the Plan.").

■ In determining whether the Plan impliedly permitted payment delay without interest, the question arises of the appropriate degree of deference to be given to Hartford's own interpretation of the language of its Plan as not containing any provision, explicit or implied, for the payment of interest on withheld benefits. Because the issue of whether to imply a provision for payment of interest into the terms of the Plan calls for a legal determination, a *de novo* standard of review applies. *Cf. Weil v. Retirement Plan Admin. Comm. of Terson Co.,* 913 F.2d 1045, 1049 (2d Cir.1990) ("When an eligibility determination by plan administrators turns on a question of law, courts have not hesitated to apply a de novo standard of review."), *vacated in part on other grounds* 933 F.2d 106 (2d Cir.1991).

■ Before reaching the merits of plaintiff's claim for interest under

§ 502(a)(1)(B) and the Plan, however, the Court addresses the Second Circuit's query regarding "the possibility that plaintiff's claim may be moot" in light of the fact that "[b]ecause the district court required Hartford to disgorge profits on the withheld payments under § 502(a)(3), plaintiff may already have recovered equitably all of the money to which he claims entitlement as contractual interest." *Dobson,* 389 F.3d at 400. "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987). Here, defendant argues that plaintiff's recovery—via stipulated Judgment—on his § 502(a)(3) claim presupposes that there is no recovery under § 502(a)(1)(B) because equitable relief under § 502(a)(3) is only appropriate in the absence of a legal/contractual remedy. Defendant cites, *inter alia,* the Supreme Court's decision in *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), which found that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" *id.* at 515, 116 S.Ct. 1065, to support this proposition.[2] As this quotation illustrates, however, *Varity* held only that equitable relief pursuant to § 502(a)(3) might not be appropriate in the face of availability of "legal" monetary relief under § 502(a)(1)(B), but not that the converse is necessarily true. Defendant cites no other authority to support its position.[3] Moreover, although defendant evinces concern about double recovery, plaintiff acknowledges that double recovery is not permitted. *See Conway v. Icahn & Co., Inc.,* 16 F.3d 504, 511 (2d Cir.1994) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed."). *Varity* thus does not preclude plaintiff's entitlement to pursue both statutory claims, *see Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89–90 (2d Cir.2001) (finding "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate. If the plaintiffs ultimately prevail on this claim upon remand, the district court must then fashion appropriate relief."), and, should he be successful under both claims, he will elect his remedy.[4]

Turning thus to the substance of plaintiff's claim that he is entitled to recover interest on the withheld benefits pursuant to an implied interest provision in the terms of the Plan, the Court finds that recovery of interest on unreasonably withheld benefits payments is an implicit "benefit" under the Plan. As a preliminary

---

2. *See also Frommert v. Conkright,* 433 F.3d 254, 270 (2d Cir.2006) ("Because adequate relief is available under [§ 502(a)(1)(B)], there is no need on the facts of this case to also allow equitable relief under § 502(a)(3).") (internal citation omitted).

3. Further, it seems disingenuous for Hartford to argue now, after the parties reached a stipulated agreement regarding disgorgement on the § 502(a)(3) claim, that the stipulation precludes consideration of his § 502(a)(1)(B) claim.

4. Defendant also has not demonstrated that plaintiff has in fact "recovered equitably all of the money to which he claims entitlement as contractual interest" as the Second Circuit queried. There has been no showing that the amount of money received by plaintiff for his § 502(a)(3) claim—constituting Hartford's profits on the withheld benefits—is equivalent to (or more than) the amount of money he would receive if he were found entitled to recover interest on those benefits under § 502(a)(1)(B).

matter, it does not appear to be disputed (nor viewed as unsettled by the Second Circuit on appeal in this case), that an entitlement to interest on withheld benefits may not be implied into ERISA itself, § 502(a)(1)(B). See *Russell,* 473 U.S. at 146–47, 105 S.Ct. 3085 ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute.... Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.") (emphasis in original) (internal quotations omitted); *Dobson* 389 F.3d at 398 (recognizing that *Russell* "rejected a remedy that was neither expressed nor implied in the Plan, but that plaintiff claimed was implicit *in the ERISA statute*") (emphasis in original).[5] The issue, thus, is whether such an entitlement—in the form of a contractual benefit—can be implied into the terms of the Plan itself, such that interest can properly be deemed a "benefit[ ] due to [plaintiff] under the terms of his plan." ERISA § 302(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

As noted above, the Second Circuit stated that *Russell,* while "barring implied statutory rights," does not "bar[ ] enforcement of implied contractual rights," *Dobson,* 389 F.3d at 398, expressed its "tenta-tive and not binding" observation that "[a]t first blush, plaintiff's interpretation seems to us to represent a more likely meaning of the Plan's silence on the question of interest than defendant's," *id.* at 395, and instructed that "whether interest is due under the terms of a plan is determined by inspecting the terms of the particular plan. That interest was, or was not, due under the terms of the other plans reviewed in [cases contemplating availability of prejudgment interest as an equitable remedy] does not tell us whether the present Plan calls for payment of interest," *id.* at 396.

At least two other cases in this Circuit have suggested in dicta that such implication is permissible under ERISA. The Second Circuit in *Dunnigan v. Metropolitan Life Insurance Company,* 277 F.3d 223, 231 (2d Cir.2002), did not actually resolve the issue due to its finding that plaintiff was entitled to interest under § 502(a)(3), but it nonetheless recognized "that courts have frequently stated that the remedy of § 502(a)(1)(B) of 'benefits due ... under the Plan' may be invoked only to recover benefits under the explicit terms of the plan." The court also observed that "[o]n the other hand, it seems difficult to justify a distinction that would make an explicitly stated right recoverable while an implicit right was not. A benefit implicitly due under the terms of a plan would seem to be a 'benefit due ... under the terms of his plan.'" *Id.* In *Babcock ex rel. Computer Management Sciences, Inc. v. Computer Associates International, Inc.,* 186 F.Supp.2d 253, 260 (E.D.N.Y. 2002), the court, considering a motion to dismiss plaintiff's § 502(a)(1)(B) claim,

---

**5.** Indeed, as defendant notes, where Congress intended interest to be available under ERISA, it drafted a provision into the statute. *See* 29 U.S.C. § 1132(g)(2); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19–20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory con-struction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.") (internal quotation omitted).

concluded that "the Second Circuit's recent decision in *Dunnigan* teaches that the interest after a reasonable period of delay can be an implicit benefit under the terms of a benefit plan," and, viewing the facts in the light most favorable to the plaintiff, determined that "interest after a reasonable period of delay can be an implicit benefit under the Plan."

Here, as the Second Circuit recognized, recovery of interest on unreasonably withheld benefits can be implied into the terms of the Plan as a "benefit" on the basis of the universally recognized concept of the time value of money: "[i]f benefits are not paid until after they are due, beneficiaries receive less monetary value than they are contractually entitled to." *Dobson*, 389 F.3d at 395. In this case, the Plan provides, in its "Time Payment of Claims" section, that "accrued benefits *will be paid* at the end of each month that you are Disabled." Joint Stmt. ¶ 23 (emphasis added). The mandatory language of the provision for the monthly payment of benefits makes clear that the payment of such benefits *at the time provided* is the "benefit" accorded a beneficiary under the Plan. Thus, such a beneficiary is entitled to the value of his or her benefits *at the time they are due* and thus, in recognition of the time value of money, if those benefits are not paid when they are due, but are instead unreasonably delayed and paid later, the value of those benefits must include accrued interest to replace their otherwise diminished value to the plaintiff.

While the only courts of appeal to have definitively addressed this issue have con-

cluded that terms for interest cannot be implied into the ERISA plans at issue, those courts did not appear to consider this basis for implying interest as part of the "benefit" in the case of delayed payments, but rather relied only on the explicit terms of the plans at issue. The Seventh Circuit in *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495, 497 (7th Cir. 1999), addressed a claim for interest on benefits the plaintiffs claimed they could have earned had they been paid their benefits in a timely fashion and invested it, and found "but interest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B)." A few years later the Eleventh Circuit, in *Flint v. ABB, Inc.*, 337 F.3d 1326, 1329 (11th Cir.2003), joined *Clair* in concluding that implication of a contractual term for interest as a "benefit" of a plan thus justifying recovery under § 502(a)(1)(B) was unfounded. *Flint* acknowledged the Supreme Court's "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly," and thus joined *Clair* in finding that "if interest is not a benefit expressly provided for in the employee-benefit plan, it cannot be recovered under § 502(a)(1)(B)" where the specific plan at issue "d[id] not provide for such interest." *Id.* (internal quotations omitted).[6]

---

**6.** More recently, the Eleventh Circuit reaffirmed this holding in *Green v. Holland*, 480 F.3d 1216, 1222–24 (11th Cir.2007), concluding "[b]ecause a cause of action under § 502(a) is limited to those claimants seeking to recover 'benefits due to [them] under the terms of [the] plan, and because *Flint* makes clear that an independent cause of action for

interest will not lie under § 502(a)(1)(B) when the pension plan fails to provide for such interest as a benefit, the district court acted properly in concluding that [plaintiff's] § 502(a)(1)(B) claim failed as a matter of law," as the Plan made "no explicit mention of accrued interest in its description of the Plan benefits."

Addressing potential deficiencies in the outcomes of *Clair* and *Flint,* the Second Circuit in this case expressed a concern that if interest were not recoverable under a policy's terms and enforceable pursuant to § 502(a)(1)(B), "Hartford could again disregard its contractual obligation to pay benefits monthly. Instead of paying benefits when due, Hartford could accumulate the cash, conserve its resources, earn interest off the improperly retained funds, and deprive disabled beneficiaries of desperately needed benefits without contractual consequences—obligating the beneficiary to retain counsel and institute suit in the hope of obtaining relief quickly enough to avoid injury, or recovering some equitable substitute for interest on the delayed payments." *Dobson,* 389 F.3d at 395. Indeed, as the Second Circuit recognized, the only way to incentivize timely payments to beneficiaries, rather than having them endure a gap in the payment stream (during which time, the Second Circuit anticipated, they might have to borrow money to meet their "accumulating obligations"), is to regard the time-value of this monthly benefit as the full value of the "benefit" promised under the Plan, absent any express provision to the contrary. While beneficiaries might otherwise seek to mitigate their losses by "bringing suit for an injunction to compel timely payments or by recovering an equitable substitute for interest," as the Circuit observed "those potential remedies may be scant comfort in view of the high cost and extreme impracticality of bringing suit for what are likely to be small amounts." *Id.* Further, while defendant contends that the business tactic such

as the one identified by the Circuit would cause an insurer in the competitive marketplace of ERISA plans to lose business, it is speculative to consider whether any such loss would be substantial enough to deter this insurer practice, or whether it would be too isolated a practice in the industry to have such a substantial consequence.[7]

Accordingly, plaintiff's Motion for Summary Judgment as to his § 502(a)(1)(B) claim will be granted, and defendant's Motion will be denied.

## B. § 502(a)(3) Claim for Injunctive/Declaratory Relief

■ Plaintiff also seeks "a judgment establishing a presumption that Hartford must disgorge profits earned on past-due benefits in all other instances as an equitable remedy under ERISA § 502(a)(3)." Pl. Mot. at 1–2. Notwithstanding that pursuant to the stipulation of the parties the Court already entered Judgment for plaintiff on his individual § 502(a)(3) claim, determining "that [Hartford] breached its fiduciary duty to the Plaintiff in violation of ERISA § 404, 29 U.S.C. § 1104, and ... that Plaintiff is entitled to equitable relief in the form of equitable disgorgement pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)," and awarding plaintiff the sum of $3,779.22, constituting the equitable disgorgement of profits earned by Hartford on plaintiff's long term disability benefits from the period of April 1, 1997 through March 1, 1998 (plus prejudgment interest and attorney's fees and

---

7. The Court observes that defendant's argument that plaintiff's claim for interest is somehow predicated on state common law, and as such is preempted by ERISA, is inapposite because plaintiff is not seeking a state law remedy, but rather claims an implied provision of the Plan entitling him to recovery of interest under ERISA as a "benefit" of the

Plan. This case can thus be distinguished from the cases cited by defendant, *see Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Gerosa v. Savasta & Co., Inc.,* 329 F.3d 317 (2d Cir.2003), which concerned the scope of preemption of state law causes of action by ERISA.

costs), *see* Judgment [Doc. # 112], plaintiff now "seeks a determination from this Court that where Hartford has violated the time limits for deciding claims or appeals specified or incorporated into its ERISA plans and/or violates the time limits set forth in the applicable ERISA regulation, it must presumptively disgorge its profits on the withheld benefits," Pl. Mem. at 30. Plaintiff represents that "[i]f the Court grants [his] motion in this regard, [he] will move the Court for further relief," *id.* at 30 n. 6, referring to his stated intent to "seek a mandatory injunction requiring Hartford to disgorge such profits unless it can demonstrate to an Independent Fiduciary appointed by the Court that the presumption should be overcome in a particular instance." *Id.* at 9–10.

This idea of an independent fiduciary echoes plaintiff's briefing on his Motion for Class Certification After Remand, and his request here appears to be an attempted second bite at issues already determined by the Court's denial of that Motion:

> In this instance it would be no more efficient to proceed on a class-wide basis than for one individual plaintiff to proceed on his or her action, obtain a declaration of law as to the advocated presumption, and for other then to invoke that declaration in subsequent actions. To certify the proposed class for purposes of making a legal declaration that would be only preliminary to a possible finding of liability, and to then appoint

an independent fiduciary or special master to conduct individual liability hearings and make recommended rulings to the Court, would effectively constitute a public subsidy of several thousand individual lawsuits.

Ruling on Pl. Mot. for Class Cert. After Remand [Doc. # 172] at 26–27. Granting the requested declaratory presumption here and allowing that declaration to have effect by appointing an independent fiduciary as plaintiff envisions would be tantamount to having certified the class plaintiff urged.

■■■ Further, in the context of this non-class, individual action, plaintiff's § 502(a)(3) claim is moot. Hartford already stipulated to its breach of fiduciary duty under § 502(a)(3) and agreed to disgorge its profits earned on the withheld benefits, as memorialized in the Court's August 2002 Judgment. Additionally, pursuant to the parties' January 2007 Partial Release and Compromise Settlement Agreement, which was submitted to the Court by Stipulation and "so ordered" on February 28, 2007, *see* [Doc. # 191], plaintiff obtained prospective relief in the form of an agreement that "Hartford will change and/or establish new policies and procedures for the payment of interest in cases where the decision to pay a long-term disability claim under a group policy issued to an employer is delayed beyond the relevant Department of Labor regulatory guidelines," *id.* at 3, ¶ 2.[8] Thus, because "[f]ederal courts lack jurisdiction to

---

8. Plaintiff contends that the fact and terms of the parties' partial settlement, by agreement, may not be used "for any purpose in the Lawsuit, including but not limited to class certification; provided, however, that Plaintiff shall be able to enforce the terms of the settlement described below, that Hartford shall be able to invoke the fact of and terms of this settlement in the event that Plaintiff prevails on any one or more of his claims and seeks prospective relief, and that Plaintiff

shall be able to invoke the fact of and terms of this settlement in support of any motion, petition, or application of attorneys' fees pursuant to Paragraph 4, below." *Id.* at 2–3 ¶ 1. However, by the very terms of this provision, Hartford is allowed to invoke the fact of and terms of this settlement in the event that plaintiff prevails—as he has done on his § 502(a)(3) claim—and seeks prospective relief—as he seeks now in the form of a declaratory presumption of entitlement to disgorgement of

decide moot cases because their constitutional authority extends only to actual cases or controversies [and,] [t]o satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision," *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983), plaintiff's § 502(a)(3) claim no longer presents a case or controversy because a favorable determination—that is, the declaration of the presumption plaintiff claims—would not benefit plaintiff as plaintiff's injury caused by Hartford's breach of its fiduciary duty has already been redressed.

■ Moreover, as plaintiff's Motion for Class Certification After Remand was denied, plaintiff does not have standing, in a representative capacity, for those Hartford ERISA plan participants whose benefits have been unreasonably delayed but who have not recovered the disgorgement of profits which plaintiff has already obtained. Thus, plaintiff's Motion with respect to the § 502(a)(3) claim will be denied.

## V. Conclusion

For the foregoing reasons, plaintiff's Motion for Summary Judgment [Doc. # 183] is GRANTED with respect to his § 502(a)(1)(B) claim and DENIED with respect to his § 502(a)(3) claim. Defendant's Motion for Summary Judgment [Doc. # 180] is DENIED. The parties are directed to file a joint status report settlement thus falls within the scope of this exception.

IT IS SO ORDERED.

profits. Consideration of the prospective relief obtained via **by September 7, 2007** apprising the Court of what further determinations

need to be made before Judgment can enter for plaintiff on his § 502(a)(1)(B) claim (*i.e.,* amount of interest to be awarded).